# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# LOUISVILLE DIVISION

**CIVIL ACTION NO. 3:09-CV-00915-JHM**

**KENTUCKY FARM BUREAU**
**MUTUAL INSURANCE COMPANY**                                        **PLAINTIFF**

**V.**

**GENERAL ELECTRIC COMPANY**                                         **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant General Electric Company's Motion for Summary Judgment [DN 40]. Fully briefed, this matter is ripe for decision.

## I. BACKGROUND

This is a subrogation action instituted by Kentucky Farm Bureau Mutual Insurance Company (KFB) on behalf of its insureds, Carl and Wanda Edwards, due to a fire that destroyed the Edwardses' home. On the morning of April 27, 2008, Wanda Edwards placed some clothing into the family's GE electric dryer. Wanda then went to have a cup of coffee. While she was drinking her coffee, Wanda looked out her window and noticed a strange fog in her yard. She pointed out this fog to her husband, Carl, who went outside to investigate the fog's source. Carl soon discovered, that the fog was actually smoke that was blowing out of the dryer vent.

While Carl was outside, Wanda went back to the laundry room to check on the clothing in the dryer. She entered the room and saw smoke rising from the sides and back of the dryer. She attempted to move the dryer away from the wall, but it was too hot to touch. Carl came back inside and turned off the main power breaker to the house. After the breaker was switched off, the dryer continued to expel smoke and the Edwardses then called the fire department and waited outside for its arrival. Shortly thereafter, smoke began billowing from the eaves of the home and it burned to

the ground.

KFB retained Forensic Fire Investigation Bureau, Inc. to perform a cause and origin investigation of the fire in the Edwardses' home. Norman Houglan, CFEI, of Forensic Fire conducted the investigation and concluded that the fire originated in the dryer. Houglan's conclusion was based on several factors including examination of burn patterns, charring, and electrical wiring as well as elimination of all other electrical appliances or electrical malfunctions as the start of the fire.

Houglan retained John C. Pfeiffer, P.E., of Pfeiffer Engineering Co., Inc. to inspect the dryer in an attempt to identify the cause of the fire. Pfeiffer inspected the dryer twice, once with Houglan and then again with the GE investigator over one year later. In his original Fed. R. Civ. P. 26(a)(2) report, Pfeiffer identified only one possible cause of the fire, which was failure of the dryer's motor due to overheating. Two days before Pfeiffer's deposition, KFB served a supplemental report on GE that was materially different. The supplemental report still maintains that the fire originated in the dryer, but instead of one cause, the new report lists three possible causes within the dryer: (1) a failure of the dryer motor; (2) "friction heat" caused by the belt that turned the dryer's drum; or (3) an electrical short circuit involving unspecified wiring in the dryer. Pfeiffer's supplemental report states that "based on a reasonable degree of engineering certainty, [] the probable cause of the fire . . . [was] one of three potential causes." Pfieffer Supp. Report 25-26. The supplemental report also states that "[d]ue to the extent of damage and the lack of specific dryer model identification we cannot narrow the probable cause to a single failure as the cause of the fire." Id. While Houglan testified at his deposition that he did not intend to offer any criticism of the design or manufacture of the dryer or attempt to identify any particular defect in the dryer, Pfieffer stated

2

that if more information regarding the exact dryer model number became available that he could possibly testify regarding the design of the dryer and possible alternatives. However, at the time of his deposition, Pfeiffer stated that he could not offer any criticism regarding the manufacture of the dryer nor could he point to any specific defects.

## II. STANDARD OF REVIEW

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and of identifying that portion of the record which demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party is required to do more than simply show there is some "metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The rule requires the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by " showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson, 477 U.S. at 252.

### III. DISCUSSION

KFB has alleged strict products liability, negligence and breach of warranty claims against GE. All three of these claims require a showing of causation. Holbrook v. Rose, 458 S.W.2d 155, 157 (Ky. 1970). "Legal causation may be established by a quantum of circumstantial evidence from which a jury may reasonably infer that the product was a legal cause of the harm." Id. (citation omitted). "The plaintiff must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of a defendant was a substantial factor in bringing about the result." Texaco, Inc. v. Standard, 536 S.W.2d 136, 138 (Ky.1976). "Generally, the existence of a defect in the product itself may be established by a sufficient quantum of circumstantial evidence." Holbrook, 458 S.W.2d at 157. Circumstantial evidence may demonstrate the defect if the evidence is "sufficient to tilt the balance from possibility to probability" that the product was defective. Morales v. American Honda Motor Co., Inc., 151 F.3d 500, 507 (6th Cir. 1998). Evidence that induces mere "surmise or speculation" does not establish a defect. See Highway Transport Co. v. Daniel Baker Co., 398 S.W.2d 501, 502 (Ky. 1966).

Defendant GE argues that KFB's expert has identified three possible causes of the start of the fire. GE contends that KFB's inability to identify which of the three causes started the fire prevents it from tilting the balance from possibility to probability and requires a finding that GE is entitled to summary judgment as a matter of law. In support of this argument, GE relies upon Gray v. General Motors Corp., 133 F. Supp. 2d 530 (E.D. Ky. 2001). In Gray, the plaintiff attempted to establish a products liability claim based on circumstantial evidence when his seat belt failed due to a phenomenon called skip lock. The plaintiff's expert "outlined numerous possible problems with the restraint system which may have caused skip lock. . . . [but] refused to isolate any of those

potential defects as a probable cause of skip lock." Id. at 534. The court found that the plaintiff was unable to tilt the balance from possibility to probability and granted the defendant's motion for a directed verdict.

GE relies on Gray, claiming that KFB must do more than point to potential problems with the inner workings of the dryer to prove its case using circumstantial evidence. Although it is unclear, it appears that the allegedly defective product in Gray, a seatbelt, was not extensively damaged. The court in Gray stated that the plaintiff's expert could not determine which part of the seatbelt was defective "without testing, which he did not perform." Gray, 133 F. Supp. 2d at 533. This indicates that in Gray, the possibility of further testing to identify the exact defect was possible. The instant case is markedly different. While the dryer still exists, the internal mechanisms which are allegedly defective are so damaged that the experts could not conclusively determine what caused the fire. Pfeiffer testified that to conduct further testing would destroy what was left of the inner workings of the dryer. This presents a situation much more analogous to Kentucky Farm Bureau Mutual Insur. Co. v. Hitachi Home Elec., 2009 WL 2760956 (E.D. Ky. 2009).

In Hitachi, plaintiff's experts were able to trace the cause of a house fire to a Hitachi television based on burn patterns and the family's testimony that they saw flames engulfing the wall that held the television. Plaintiff's expert testified that the television was the probable cause of the fire, but also admitted that he was "unable to identify a defect, manufacturing or design, in the television[,]" due in part to the extensive damage to the television. Id. at *2. Defendant moved for summary judgment contending that plaintiff could not meet its burden that a defect in the television caused the fire. The court found that the plaintiff's circumstantial evidence (the family's testimony that the fire was on the same wall as the television, the expert's conclusion that the television was

5

the probable cause of the fire, and the expert's elimination of various other possible causes like a DVD player and VCR player as the cause of the fire) "presented sufficient evidence to create a jury issue on whether the television caused the fire." Id. at *4. To the extent that defendant disputed plaintiff's expert's elimination of other possible causes, the court found that such a dispute only created factual issues which precluded summary judgment.

In the instant case, Plaintiff has identified the probable cause of the fire, the dryer. The Edwardses saw smoke rising from the dryer prior to the fire beginning. Plaintiff's fire inspector, Houglan, traced the burn patterns back to the dryer and Pfeiffer has opined that the cause of the fire was the GE dryer. Houglan eliminated all other appliances and electrical malfunctions as possible causes of the fire. Pfeiffer also eliminated the possibility that the fire started outside of the dryer, instead concluding, based on a reasonable degree of certainty, that the fire began in the base of the dryer. This circumstantial evidence is enough to allow a reasonable jury to decide that KFB has tilted the balance from possibility to probability. To the extent that Plaintiff identified multiple possible causes within the dryer, that is not fatal to its claim because the jury will have sufficient evidence to find that GE's conduct was a substantial factor in bringing about the harm, regardless of which of the three possible causes is advanced. In similar situations, this Court and others have allowed products liability claims to proceed to the jury.[1]

---

[1] See Kentucky Farm Bureau Mutual Insur. Co. v. Deere & Co., 2008 WL 339622 (W.D. Ky.) ("While KFB cannot isolate the exact defect that caused the tractor to burn, the fire investigator eliminated potential causes of the fire other than a problem in the fuse box. Because the fuse box has been isolated as the ignition site of the fire, there is sufficient circumstantial evidence of a defect in the tractor for this case to proceed."); Kentucky Farm Bureau Mutual Insur. Co. v. Hitachi Home Elec., 2009 WL 2760956 (E.D. Ky. 2009) (denying defendant's motion for summary judgment when plaintiff could not point to a specific defect in a television because it was too damaged); Turpin v. Stanley Schulze and Co., Inc., 2009 WL 875218 (Ky. Ct. App. 2009) (denying defendant's motion for summary judgment when an allegedly defective

KFB's evidence points to one probable cause of the fire, the dryer. The jury is not left to speculate as to multiple theories of liability because each of the potential causes is attributable to GE. The Court finds that the plaintiff has produced enough evidence to create a triable issue for the jury. Therefore, Defendant GE's motion for summary judgment is denied.

## IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that Defendant General Electric Company's Motion for Summary Judgment [DN 40] is **DENIED**.

cc: counsel of record

---

door was disposed of and could not be tested, but sufficient circumstantial evidence existed to create a genuine dispute of material fact regarding whether the door was defective).