**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

**CIVIL ACTION NO. 3:09-CV-00915-JHM**

**KENTUCKY FARM BUREAU**
**MUTUAL INSURANCE COMPANY**                                    **PLAINTIFF**

**V.**

**GENERAL ELECTRIC COMPANY**                                    **DEFENDANT**

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendant General Electric Company's Motion in Limine to Exclude Testimony of Expert John Pfeiffer [DN 45] and Motion in Limine to Exclude Evidence of Financial Condition or Profits [DN 46]. For the following reasons, Defendant's Motion to Exclude Testimony of Expert John Pfeiffer is **DENIED** and its Motion to Exclude Evidence of Financial Condition or Profits is **GRANTED**.

**I. BACKGROUND**

This is a subrogation action instituted by Kentucky Farm Bureau Mutual Insurance Company (KFB) on behalf of its insureds, Carl and Wanda Edwards, due to a fire that destroyed the Edwardses' home. Plaintiff's experts have testified that the fire originated from the Edwardses' GE manufactured clothes dryer. Plaintiff's electrical engineering expert, John C. Pfeiffer, produced a preliminary report that concluded that the likely cause of the fire was motor failure and overheating. This report was based on a limited inspection of the dryer conducted on May 27, 2008. The inspection was limited due to Pfeiffer's fear that a more in depth inspection would destroy parts of the dryer before Defendant had an opportunity to inspect it.

 Pfeiffer and Defendant's expert, Scott Barnhill, conducted a joint destructive investigation of the dryer on August 18, 2009. During this investigation, the experts conducted a full examination

of the dryer, which included removing insulation from wiring and taking measurements and photos of many of the internal mechanisms. After this investigation, Pfeiffer amended his report to reflect that there were three possible causes of the fire: (1) a failure of the dryer motor; (2) "friction heat" caused by the belt that turned the dryer's drum; or (3) an electrical short circuit involving unspecified wiring in the dryer. Pfeiffer's supplemental report also states that "[d]ue to the extent of damage and the lack of specific dryer model identification we cannot narrow the probable cause to a single failure as the cause of the fire." Pfieffer Supp. Report 25-26. Because of the damage, Pfeiffer was unable to verify what type and/or model number the Edwardses' dryer was, but he concluded that the dryer was most likely a GE type 457 based on a comparison of the dryers' features. Pfeiffer testified that he conducted no testing on exemplar dryers because without the verification of the Edwardses' model, any testing he did would likely be considered an invalid comparison.

## II. DISCUSSION

Defendant seeks to exclude the testimony of Plaintiff's expert, Pfeiffer, under Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993) and Fed. R. Evid. 702. Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Under Rule 702, the trial judge acts as a gatekeeper to ensure that expert testimony is both reliable and relevant. Mike's Train House, Inc. v. Lionel, L.L.C., 472 F.3d 398, 407 (6th Cir. 2006) (citing Kumho Tire Co. v. Carmichael, 526 U.S. 137 (1999)). In determining whether certain testimony is reliable, the focus of the Court "must be solely on principles and methodology, not on

the conclusions that they generate." Daubert, 509 U.S. at 595. In Daubert, the Supreme Court identified a non-exhaustive list of factors that may assist the Court in assessing the reliability of a proposed expert's opinion including (1) whether a theory or technique can be or has been tested; (2) whether the theory has been subjected to peer review and publication; (3) whether the technique has a known or potential rate of error; and (4) whether the theory or technique enjoys "general acceptance" within a "relevant scientific community." Id. at 592-94. This gatekeeping role is not limited only to expert testimony based upon scientific knowledge, but, instead, extends to "all 'scientific,' 'technical,' or 'other specialized' matters within" the scope of Rule 702. Kumho Tire, 526 U.S. at 147-48. Whether the Court applies the Daubert factors to assess the reliability of the testimony of an expert witness "depend[s] on the nature of the issue, the expert's particular expertise, and the subject of his testimony." Id. at 150 (quotation omitted).

Defendant GE claims that Pfeiffer's expert testimony should be excluded because his methodology is not sound and because he lacks the proper qualifications. Defendant's primary point of contention with Pfeiffer is that he concluded that the fire began in one of three possible ways without conducting tests to validate his theories or knowing the flammability properties of the possible fuels (lint, rubber belt, plastic pieces). However, as discussed above, it is not appropriate to apply the Daubert factors in each and every circumstance, rather, their application depends upon the nature of the issue, the expert's particular expertise, and the subject of his testimony.

In the instant case, the Defendant criticizes Pfeiffer for not conducting tests on exemplar dryers, as its own expert did. While Defendant's expert had the benefit of the manufacturer's disclosure of the model type prior to the deadline for his expert report, Pfeiffer had no such luxury. Pfeiffer's testimony has been consistent on this issue and demonstrates that he was hesitant to

conduct testing on exemplar dryers without first knowing what type of dryer the Edwards had. If Pfeiffer were to use the wrong exemplar dryer for his tests then the results he received would not be valid comparisons. Plaintiff sought to elicit the model and serial number from Defendant through written discovery in December 2009, four months after the experts' joint inspection of the dryer. Defendant responded that the unit was too damaged for GE to confirm with absolute certainty that it manufactured the product and that GE has been unable to identify the model or serial number. Finally, on September 20, 2010, after Pfeiffer's expert report was due and after his deposition, GE stated that "upon information and belief, the dryer appears to have been manufactured by GE in Louisville, Kentucky sometime after August 1995 and before 2000, and appears to be similar in features to dryers included in GE's '453' model family." Pls. Resp. to Mot. to Exclude Expert Ex. 6, at 5.

Considering Pfeiffer's inability to determine the proper model and exemplar on which to conduct tests, the Court finds that his failure to conduct those tests does not require the exclusion of his testimony at trial. Likewise, Pfeiffer's lack of knowledge regarding the ignition point of the lint, insulation or plastic that was present in the Edwardses' dryer prior to the fire, does not require that his testimony regarding the possible causes of the fire should be excluded. Pfeiffer examined the nature and location of the burn patterns and heat damage. Using this information, and the well accepted principle that heat rises, he concluded that the fire began at the bottom of the dryer. Pfeiffer observed physical evidence on the motor and belt that indicated that the fire could have originated as a result of those two components. Pfeiffer's opinion that arcing wires would produce molten copper that could ignite built up lint does not require that Pfeiffer know the ignition point of dryer lint. Pfeiffer has used accepted principles of fire investigation to determine that the fire in

4

the Edwardses' home began due to one of three possible causes contained within the Dryer. Pfeiffer's conclusion is based upon his observations of the physical evidence and knowledge of accepted engineering principles.

Pfeiffer's failure to conduct tests on an exemplar dryer is an issue of weight, not admissibility. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Daubert, 509 U.S. at 596. Even if Pfeiffer had conducted tests on the exemplar model he believed the Edwards owned, the 457, those results would be of little value in light of GE's disclosure that the Edwardses' dryer was in the 453 model family. Pfeiffer's lack of knowledge regarding the Underwriter's Laboratories standards for dryers or the existence of similar dryer fires are also issues to be addressed on cross-examination. They are not issues that require an entire expert's testimony to be excluded.

Defendant briefly argues that Pfeiffer is not qualified to testify as an expert in this case. Pfeiffer is a registered professional engineer in Kentucky, Indiana, Ohio, and Tennessee. He has a degree in electrical engineering and over forty years of electrical engineering experience. Contrary to Defendant's argument, just because Pfeiffer has never testified (and therefore never been recognized by any court as an expert) in a matter in which an electric clothes dryer was believed to have been the cause of a fire does not mean that he is not qualified to do so now. Pfeiffer is more than qualified to give expert testimony in this matter on account of his scientific, technical and specialized knowledge of electrical engineering and fire investigation. Finding that Pfeiffer is qualified to testify as an expert and that the methods upon which he formed his opinion are reliable, the Court **DENIES** Defendant's motion to exclude his testimony.

Defendant has also filed a motion to exclude evidence of its financial condition or profits. Plaintiff has not filed a response.  Therefore, the Defendant's motion is **GRANTED**.

### III. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that Defendant General Electric Company's Motion in Limine to Exclude Testimony of Expert John Pfeiffer [DN 45] is **DENIED**;

**IT IS FURTHER ORDERED** that Defendant's Motion in Limine to Exclude Evidence of Financial Condition or Profits [DN 46] is **GRANTED**.

cc: counsel of record